```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

FEDERAL DEPOSIT INSURANCE     )
CORPORATION, as receiver for  )
GEORGE WASHINGTON SAVINGS     ) No. 11 cv 8823
BANK,                         )
                              ) Judge Thomas M. Durkin
            Plaintiff,        )
 v                            ) Magistrate Judge Arlander Keys
                              )
THE COLEMAN LAW FIRM and      )
KEVIN FLYNN & ASSOCIATES,     )
                              )
            Defendants.       )

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Federal Deposit Insurance Corporation as Receiver for George Washington Savings Bank's ("FDIC-R") motion for protective order [#70] and motion for entry of confidentiality order [#67].

**<u>Background</u>**[1]

The FDIC-R, as receiver of George Washington Savings Bank ("GWSB"), sued to recover payments made to The Coleman Law Firm ("Coleman") and Kevin Flynn & Associates ("Flynn") (collectively "Defendants") pursuant to Defendants' advance payment retainer

---

[1] **The applicable briefs to the motions discussed throughout this Memorandum Opinion and Order are cited as follows: Plaintiff's Motion for Entry of Confidentiality Order [#67]: Conf. Mot.; Defendants' Response in Opposition to the Motion for Entry of Confidentiality Order [#79]: Conf. Resp.; Plaintiff's Reply in Opposition to Defendants' Response to the Motion for Entry of Confidentiality Order [#81]: Conf. Reply; Plaintiff's Memorandum in Support of the Motion for Protective Order [#72]: Pro. Or. Mem.; Defendants' Response in Opposition to Plaintiff's Motion for Protective Order [#80]: Pro. Or. Resp.; Plaintiff's Reply in Opposition to Defendants' Response to the Motion for Protective Order [#82]: Pro. Or. Reply.**

1

agreements with certain former officers and directors of GWSB, alleging that those payments violated 12 U.S.C. § 1828(k)(3) ("Section 1828(k)(3)"). In relevant part, Section 1828(k)(3) provides:

> No insured depository institution . . . may prepay . . . legal expense of any institution-affiliated party if such payment is made –
>
> (A)  in contemplation of the insolvency of such institution or . . . after the commission of an act of insolvency; and
>
> (B)  with a view to, or has the result of –
>
> (i)  preventing the proper application of the assets of the institution to creditors; or
>
> (ii) preferring one creditor over another.

12 U.S.C. § 1828(k)(3).

The Defendants are law firms who currently represent various former officers and directors of GWSB (collectively, "clients") with respect to all matters arising out of the clients' roles as former officers and directors of GWSB.

The District Court has ruled on Defendants' motion to dismiss [#26] and Plaintiff's motion for judgement on the pleadings [#60]. The issue remaining in this case is whether GWSB made the challenged prepayments "in contemplation of insolvency." [#60, p. 8]. In its ruling on the motion for judgement on the pleadings, the District Court noted that the parties dispute "the

details of the interactions between FDIC Corporate ("FDIC-C") and the Bank in the months leading up to the Bank's failure." [#60, p. 5].

**Plaintiff's Motion for a Protective Order**

Plaintiff argues that the discovery propounded by Defendants improperly disregards the District Court's prior rulings and seeks production of documents and information that have no bearing on the remaining issue before the Court. Plaintiff FDIC-R requests that the Court enter an order: (i) prohibiting Defendants from propounding and/or pursuing discovery into matters rendered irrelevant and/or immaterial by prior rulings in this cause; and (ii) striking Defendants pending discovery regarding such matters, thereby relieving FDIC-R of any duty to respond to discovery regarding irrelevant and/or immaterial matters. The Court declines to make such a global ruling regarding the discovery, as it foresees that the parties will continue to dispute the meaning of such a ruling. Therefore, the Court addresses Plaintiff's specific objections to Defendants' discovery requests in turn below.

Time Frame

GWSB made the challenged prepayments to Defendants Coleman and Flynn on November 20, 2009 and December 2, 2009,

3

respectively. Defendants' document requests and interrogatories request production of documents and information from November 1, 2007 forward. Plaintiff argues that this time frame is overly broad and requests that discovery be limited to 6 months prior to the challenged prepayments. Plaintiff argues that the events occurring after GWSB made the challenged prepayments are not relevant to whether GWSB, at the time it made the prepayments, knew or should have known it soon would be unable to pay its debts and placed into receivership. Pro. Or. Mem. at p. 6.

Defendants argue that the FDIC-R's attempt to limit discovery to the six-month time frame before the payments and foreclose discovery from the FDIC-R itself should be rejected on the merits. Pro. Or. Resp. at p. 6. Defendants argue that "Evidence about GWSB's financial condition and how it was operating in the months preceding receivership is clearly relevant to the issue of what its directors knew or should have known and whether suspension of ordinary operations was imminent on December 2, 2009." *Id.* at p. 7. They also argue that "such information does not become any less relevant to the objective component of the test merely because the documents reflecting it were not created until after the receivership began." *Id.* Defendants request discovery for a time period from November,

2007 – two years before the month in which advance payment retainer was paid -until the present.

As the clients' contemplation of insolvency is an unresolved issue in this case, the financial condition of the bank is relevant to this issue, and thus, the information and documents regarding this issue are discoverable. However, the Court limits these requests to one year prior to the challenged prepayment, so information and documents as of November, 2008 are to be produced. In addition, in an abundance of caution, given the wide scope of discovery, Plaintiff is also to produce documents and information concerning the financial condition of GWSB up until the date of the receivership, February 19, 2010, given other limitations discussed below. The Court understands Plaintiff's argument that these documents would not have been considered by the directors and officers of GWSB in contemplation of insolvency, but Defendants argue that these documents include data and information that the directors and officers had prior to the prepayments.

<u>Documents and Information Originating from FDIC-R</u>

Defendants' document requests and interrogatories request production of documents and information originated by FDIC-R. Plaintiff argues that FDIC-R did not come into existence until February 19, 2010, the day GWSB was seized, closed and placed

5

into receivership, which date was approximately three months after GWSB made the challenged prepayments to Defendants Coleman and Flynn. Therefore, Plaintiff argues that any documents or information originated by the FDIC-R are irrelevant and should not be produced, since they would not have any bearing on what GWSB was contemplating when it made the November 20, 2009 and December 2, 2009 prepayments to Defendants. Therefore, Plaintiff requests that this Court enter an order prohibiting Defendants from seeking documents and information originated by FDIC-R. As discussed above, documents regarding the financial condition prior to February 19, 2010 are to be produced.  However, Defendants do not make a strong argument that the documents after that date, including those originating from the FDIC-R, would be relevant to the thought process of the officers and directors of GWSB in making the prepayments. As Plaintiff stated, "Internal communications and analysis of bank financials by parties other than GWSB's directors and officers – which GWSB's directors and officers did not have either before or after authorizing the challenged prepayments – is not relevant to show what they were contemplating when they authorized the challenged prepayments." Pro. Or. Reply at p. 11. The Court agrees.

Documents and Information originating from FDIC-C

Plaintiff argues that, since the issue left to be determined is whether GWSB made the challenged prepayments in contemplation of insolvency, documents and information GWSB's directors and officers were never aware of or became aware of only after GWSB made the November 20, 2009 and December 2, 2009 prepayments to Defendants have no bearing on the issue before this Court and thus should not be discoverable. Therefore, Plaintiff requests that the Court prohibit Defendants from seeking documents and information regarding: (i) communications between FDIC and IDFPR regarding matters other than meetings with GWSB prior to December 2, 2009 (see e.g., Ex. E No. 9; Ex. F No. 7); and (ii) FDIC-C's and FDIC-R's internal files regarding matters other than meetings with GWSB prior to December 2, 2009 (see e.g., Pro. Or. Mem. at Ex. E Nos. 10-13, 41-42, 69 and 70; Ex. F No. 7).

In response, Defendants argue that "nothing is more relevant to the financial condition of GWSB and what its directors and officers should be charged with knowing/contemplating than what GWSB's regulators were discussing or analyzing with respect to those very issues." Pro. Or. Resp. at pp. 12-13. The Court disagrees. If the officers and directors did not know what was being contemplated by the FDIC-C regarding the condition of GWSB, then that information is not relevant to the issue of their contemplation, and thus not discoverable.

Irrelevant or Immaterial Matters

Plaintiff objects to many other discovery requests as irrelevant or immaterial, because they are outside the scope of contemplation of insolvency. Defendants respond that they will have to defend their clients' actual and constructive knowledge of GWSB's financial condition, operations and whether suspension of its regular business was imminent, and thus need this information. Pro. Or. Resp. at p. 2-3. Defendants argue that GWSB's actual financial condition in the months leading up to the receivership is the best source of information as to what the directors and officers knew or should have known and been contemplating. Pro. Or. Resp. at pp. 8-9.

First, Plaintiff argues that the Court should strike Defendants' demands for documents and information regarding: (i) GWSB's actual inability to satisfy its financial obligations to creditors or depositors as they came due (see e.g., Pro. Or. Mem. at Ex. E at Nos. 5, 14-17 and 33-38; Ex. F at No. 7); and (ii) GWSB's actual liabilities, deposits, accounts payable and assets (see Pro. Or. Mem. at Ex. E at Nos. 18-32), as these documents and information are not material to the unresolved issue in this case of contemplation of insolvency. The Court will allow these discovery requests limited to the dates set forth above – November 2008 through February 19, 2010.

Next, Plaintiff requests that this Court strike Defendants' demands for documents and information regarding GWSB's efforts to raise capital in response to the IDFPR's December 4, 2009 Cease and Desist Order. See e.g., Pro. Or. Mem. at Ex. E at No. 43 (See Doc. Req. Nos. 1-2, 4-8, 10, 41, 43-45, 60-65; Coleman Interrog. Nos. 4-5, 8-9, 11, 18; Flynn Interrog. Nos. 3, 5.). Plaintiff argues that the Cease and Desist Order post-dated GWSB's prepayments to Defendants Coleman and Flynn and, therefore, had no impact on what GWSB was contemplating when it made those prepayments, and accordingly, GWSB's subsequent response to the Cease and Desist Order, which is even farther removed from the issue before this Court, is clearly irrelevant. The Court agrees. Defendants' demands for documents and information regarding GWSB's efforts to raise capital in response to the IDFPR's December 4, 2009 Cease and Desist Order are stricken.

Plaintiff also requests that the Court strike Defendants' demands for documents and information regarding: (i) creditor and/or depositor demands for payment following GWSB's closure and payments made as a result of such demands or GWSB's closure (see e.g., Pro. Or. Mem. at Ex. E at Nos. 46-48; Ex. F at Nos. 12 and 13); and (ii) amounts paid or received pursuant to the February 19, 2010 Purchase and Assumption Agreement with First Merit Bank, N.A. See Pro. Or. Mem. at Ex. E at No. 49; Ex. F at No. 15. The

Court finds this information irrelevant to the unresolved issue in this case and strikes these discovery requests.

Plaintiff requests that the Court strike Defendants' demands for documents and information regarding legal services Defendants provided to the directors and officers of GWSB. See e.g., Pro. Or. Mem. at Ex. E at No. 50. Plaintiff argues that the nature of such services clearly has no bearing on whether GWSB made the challenged prepayments in contemplation of insolvency. Defendants respond that the information will go to their intent in hiring Coleman and Flynn. The Court will allow these discovery requests. Plaintiff is to answer.

Plaintiff requests that the Court strike Defendants' demands for documents and information regarding requests that the FDIC approved: (i) payments banks other than GWSB made to Defendant Coleman; (ii) advance payment retainer agreements involving banks other than GWSB; and (iii) payments for legal services provided by persons other than the Defendants. See e.g., Pro. Or. Mem. at Ex. E at Nos. 51-54; Ex. F at Nos. 14 and 20. Plaintiff argues that the FDIC's approval (or disapproval) relative to such matters plainly has no bearing on the issue at hand.

Defendants respond that Plaintiff's argument ignores the "ought to have known" component of the "in contemplation of insolvency" test as evidence that the FDIC approves payments by

"critically undercapitalized" banks is certainly relevant to whether GWSB's officers and directors should have been contemplating insolvency based on GWSB's "critically undercapitalized" financial condition. Pro. Or. Resp. at p. 12. In its reply brief, Plaintiff points to previous decisions in this case in which the Court has already corrected Defendants on their use of "undercapitalized" v. "insolvent," and finding that there are no equitable defenses to Section 1828(k)(3). Pro. Or. Reply at pp. 9-10. The Court finds that Plaintiff should not have to bear the burden and expense of engaging in discovery regarding the approval of unrelated cases in which other banks received approval of prepayments for legal services. Defendants do not show how this information is relevant to this case.

Finally, Plaintiff argues that the Court should strike Defendants' demands for documents and information regarding allegations of the Complaint that have no bearing on whether GWSB made the challenged prepayments in contemplation of insolvency. See e.g., Pro. Or. Mem. at Ex. E at Nos. 55-59 and 68-70; Pro. Or. Mem. at Ex. F at Nos. 3, 16 and 17. As explained specifically in Plaintiff's reply brief on page 13, these specific requests seek information that the Court has ruled on. This Court has reviewed the previous rulings of the District Court and finds that the information requested in these discovery requests has

been dealt with by the Court. [#26 and #60]. Therefore, those requests and interrogatories are stricken.

## II. Motion for Entry of Confidentiality Order

In the FDIC-R's motion for confidentiality order, the FDIC-R seeks entry of a confidentiality order pursuant to which Defendants must turn over certain records they obtained from their clients, each of whom is a former director and/or officer of GWSB. The parties agree that discovery in this matter will entail the disclosure of certain sensitive and proprietary information and that a confidentiality order should be entered in this case. The parties have agreed to all portions of the proposed Confidentiality Order attached to the motion as exhibit A, except paragraph 2. Defendants object to paragraph 2 to the extent it seeks to compel the return of the copies of documents in their possession.

In paragraph 2 of Plaintiff's proposed confidentiality order, Defendants must turn over to Plaintiff documents Coleman and Flynn obtained from or through their clients, each of whom is a former director and/or officer of GWSB, specifically "(i) documents or any portion of a document that belonged to GWSB; and (ii) documents that Coleman and Flynn's client(s) acquired due to his/her/their former role as a director and/or officer of GWSB (collectively, "Bank Documents")." Conf. Mot. at p. 2. Plaintiff

12

argues that these documents contain privileged information, and pursuant to Section 1821(d)(2)(A) of the Federal Deposit Insurance Act, these documents "belong exclusively to FDIC-R" and were "improperly obtained." Conf. Reply at p. 1. Plaintiff argues that, upon the termination of their status as directors and/or officers of GWSB, Coleman and Flynn's clients had no right to retain GWSB's confidential documents or disclose GWSB's confidential documents to Coleman and Flynn or any other persons. Conf. Mot. at p. 5. Pursuant to Section 1821 (d)(2)(A), on the day the FDIC was appointed Receiver of GWSB (i.e., February 19, 2010), FDIC-R succeeded to, among other things:

(i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

12 U.S.C. § 1821(d)(2)(A)

Defendants respond that "because all of the preexisting documents were, in the Defendants' view, responsive to one or more of the FDIC's document requests, the Defendants appropriately produced all of those preexisting documents to the FDIC and made others available for inspection and copying." Conf. Resp. at p. 2. Defendants argue that the Bank Documents that

13

Plaintiff requests that they "relinquish control of" are "essential to their defense" in this litigation. *Id.*

Defendants also argue that it would be a burden to give the Bank Documents to the FDIC-R and request the relevant documents back in discovery, and reason that, allowing the Defendants to retain copies of such documents currently in their possession under the terms of a protective order that requires safe-keeping and return at the conclusion of this case, does no harm to the FDIC's ostensible rights. Conf. Resp. at p. 7. In the reply brief, Plaintiff argues that most, if not all, of the disputed documents have nothing to do with the limited issue remaining in this case and that, "as former officers and directors of GWSB, Defendants' clients had fiduciary duties to GWSB, which precluded them from retaining, copying or disclosing GWSB's confidential information." Conf. Reply at pp. 2, 6. The Court does not find Defendants' arguments as a defense to Section 1821 of the Federal Deposit Insurance Act. The Bank Documents are the property of FDIC-R and should be returned. Therefore, the Court will adopt the proposed Confidentiality Order with Plaintiff's version of paragraph 2.

Defendants also assert that they are entitled to retain the disputed GWSB Bank Documents, because they may need them to persuade FDIC-R not to file a future lawsuit against their

clients seeking damages wholly unrelated to the prepayments challenged in this case. Conf. Resp. at pp. 7-8. This argument is unpersuasive. The relevant documents in any future litigation can be requested through the formal discovery process in that case.

Finally, Defendants argue that Plaintiff's definition of Bank Documents is ill-conceived and unworkable. The Court sees this argument as a red herring, as Defendants are in the position to know which documents their clients received while in their position as officers and/or directors of GWSB and which documents belong to GWSB. If after the Court enters the Confidentiality Order, Defendants have valid questions regarding the status of a specific document or group of documents as Bank Document or not, the parties are to meet and confer regarding those specific documents to determine if they should be turned over. The Court reminds both sides that these communications should be had in good faith and are not to be used to delay this litigation or cause the other side any additional burden.

## CONCLUSION

For the aforementioned reasons set forth, Plaintiff's motion for entry of the confidentiality order is granted, and Plaintiff's motion for protective order is granted in part and denied in part as discussed above. Plaintiff is to respond to the outstanding discovery requests addressed in this opinion within

14 days. The Court will enter the Confidentiality Order and the parties are to agree on a reasonable date for the turnover of the Bank Documents. The parties should be prepared to inform the Court as to the deadline for turnover of the Bank Documents at the October 18, 2013 status hearing.

DATE: October 8, 2013                ENTER:

*(signature)*
ARLANDER KEYS
United States Magistrate Judge