# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as RECEIVER for GEORGE WASHINGTON SAVINGS BANK, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No: 11 C 8823 |
| v. | ) Magistrate Judge Daniel G. Martin |
| THE COLEMAN LAW FIRM and KEVIN FLYNN & ASSOCIATES, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Federal Deposit Insurance Corporation's Motion to Compel [97]. For the reasons and to the extent stated below, Plaintiff's Motion to Compel [97] is granted.

## BACKGROUND

On February 19, 2010, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of George Washington Savings Bank ("GWSB"). The FDIC, as receiver of GWSB, filed this lawsuit on December 13, 2011 seeking to recover $250,000 that GWSB prepaid to Defendants pursuant to Advance Payment Retainer Agreements ("Retainer Agreements"). Defendants are law firms who currently represent various former officers and directors of GWSB. The parties to the Retainer Agreements are: (i) GWSB; (ii) certain former directors and officers of GWSB (collectively, "D/Os"); and (iii) Defendant, The Coleman Law Firm ("Coleman"), or Defendant, Kevin Flynn & Associates ("Flynn"). Per the Retainer Agreements, Coleman and Flynn agreed to "advise, counsel and defend the D/Os in connection with: any action, suit or proceeding, whether civil, criminal, or administrative or investigative, in which [the D/Os] are made, or are threatened to be made, a party to, or witness in, such action, suit or proceeding by reason of the fact that he is or was an officer,

director or employee of [GWSB] . . . ."  (Doc. 1-1 at 2, 6).

The FDIC-R alleges that GWSB's prepayments to Coleman and Flynn violated 12 U.S.C. § 1828(k)(3) of the Federal Deposit Insurance Act, which prohibits prepayment of legal expenses on behalf of institution-affiliated parties, such as a financial institution's officers or directors, if such payments are: (i) made in contemplation of the institution's insolvency; and (ii) the payments have the purpose or effect of preventing proper application of the assets of the institution to its creditors or preferring one creditor over another.  According to the FDIC-R, the prepayment provisions of the Retainer Agreements were and are *void ab initio*, and under Illinois law, the FDIC-R can recover for GWSB's prepayments.  Defendants Coleman and Flynn have denied material aspects of the FDIC-R's claims.

This case was originally assigned to District Judge Milton I. Shadur and Magistrate Judge Arlander Keys and then reassigned to District Judge Thomas M. Durkin on January 14, 2013. (Doc. 62).  On May 14, 2014, Judge Keys extended the non-expert fact discovery cut-off to August 31, 2014.  (Doc. 101).  When Magistrate Judge Keys retired from the bench, the case was reassigned to the undersigned Magistrate Judge effective May 30, 2014.  The FDIC-R's current motion to compel is fully briefed and resolution of the motion is within the scope of the referral order, which includes discovery supervision.  (Doc.73).

## DISCUSSION

In its motion, the FDIC-R seeks production of documents relating to the negotiation and/or execution of the Coleman and Flynn Retainer Agreements.  The FDIC-R argues that such documents constitute "Bank Documents," which Magistrate Judge Keys previously ordered Defendants to return to the FDIC-R.  The FDIC-R also asserts that there are documents which Defendants have improperly withheld on the basis of attorney-client privilege or as attorney work-product.  After reviewing the briefing, the Court now rules as follows.

**A.     Bank Documents**

On October 8, 2013, Judge Keys granted the FDIC-R's motion for entry of confidentiality order and ordered Defendants to return "Bank Documents" to the FDIC-R. (Doc. 85). Judge Keys held that the "Bank Documents are the property of FDIC-R and should be returned." (Doc. 85 at 14). The FDIC-R asserts that Magistrate Judge Keys' order is the "law of the case." The FDIC-R argues that the universe of Bank Documents is defined by federal statue, and that federal statute is controlling. See 12 U.S.C. § 1821(d)(2)(A). The FDIC-R explains that it merely used the phrase "Bank Documents" to "describe certain documents the Federal Deposit Insurance Corporation took ownership of, as a matter of law, when it was appointed receiver of GWSB." (Doc. 108 at 3). Judge Keys adopted and entered the FDIC-R's proposed version of the Confidentiality Order. The Confidentiality Order defines Bank Documents as "any document or any portion of a document that belonged to George Washington Savings Bank, or that one of their clients acquired due to his/her former role as a director and/or officer of George Washington Savings Bank." (Doc. 86 at 2).

Defendants represent that they returned Bank Documents as defined in the Confidentiality Order. Defendants also state that they have produced communications with the law firm that represented GWSB prior to the Receivership and all documents reflecting communications with GWSB's then counsel related to the Retainer Agreements. Defendants contend that none of the groups of documents sought by the FDIC-R are Bank Documents as defined by the Court.

It is clear from the record and logical to conclude that Judge Keys intended Defendants to return any documents that fall within the statutory definition of Bank Documents. While Judge Keys did not explicitly state that the universe of Bank Documents is defined by Section 1821(d)(2)(A), this point was part of the FDIC-R's briefing on the motion for entry of confidentiality order, which was granted in full. See (Doc. 81 at 8) (FDIC-R explaining that its definition of "Bank Documents" "encompasses the very same documents that Section 1821(d)(2)(A) defines as belonging to FDIC-

R."). As Judge Keys specifically noted, Section 1821(d)(2)(A) of the Federal Deposit Insurance Act, in relevant part provides that upon appointment as receiver, the Federal Deposit Insurance Corporation succeeds to, among other things:

> (i) all rights, titles, powers, and privileges of [GWSB], and of any stockholder, members, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and
>
> (ii) title to the books, records, and assets of any previous conservator or other legal custodian of [GWSB].

12 U.S.C. § 1821(d)(2)(A); (Doc. 85 at 13). Judge Keys stated that he did not "find Defendants' arguments as a defense to Section 1821 of the Federal Deposit Insurance Act." (Doc. 85 at 14). Accordingly, Defendants are required to return all documents falling within Section 1821(d)(2)(A)'s definition.

**B.    Non-Bank Documents**

In the event any of the documents relating to the negotiation and/or execution of the Retainer Agreements are not documents falling within Section 1821(d)(2)(A)'s definition, Defendants assert that the attorney-client privilege and work-product doctrine protect these documents from disclosure. The FDIC-R argues that it is entitled to withheld communications relating to the negotiation and/or execution of the Retainer Agreements based on the common interest doctrine, which is an exception to the attorney-client privilege and work-product protection.

"The general rule is that material which is otherwise privileged is discoverable if it has been disclosed to a third party." Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 139 (N.D. Ill. 1993). An exception to this rule applies when a third party shares a common interest with the disclosing party which is adverse to that of the party seeking discovery. Id. at 140. This exception is known as the "common interest" or "joint defense" doctrine. Under the common interest doctrine, "the disclosure of privileged material to a third party will not result in waiver if the parties share a common interest in the case." Costello v. Poisella, 291 F.R.D. 224, 231 (N.D. Ill.

2013) (noting common interest doctrine also applies to attorney work product). "The common interest exception applies when an attorney acts for the common legal goals of two parties, even if only one party has a formal representation agreement with the attorney." Federal Deposit Ins. Corp. v. Belongia Shapiro & Franklin, LLP, 2012 WL 5877559, at *4 (N.D. Ill. Nov. 19, 2012). The common interest privilege "falls away when there is a dispute between . . . the two parties with common interests that is within the scope of the attorney's representation." Id.

At the outset, the parties dispute whether federal or Illinois law controls the privilege and work-product doctrine analysis in this case. The FDIC-R says Illinois law, and Defendants argue federal law. The FDIC-R points out that Judge Shadur has already recognized that the "FDIC is not attempting to advance a federally implied private action–instead it invokes Illinois law as to the consequences of the violation of the federal statute." (Doc. 26 at 9). It does not seem to matter which underlying privilege or work-product doctrine law applies because no relevant difference regarding the common interest exception has been identified by the parties. Because "[t]he legal principles governing application of the common interest doctrine appear to be the same under Illinois and federal law," it is unnecessary for the Court to decide which underlying law applies. Dexia Credit Local v. Rogan, 231 F.R.D. 268, 273 (N.D. Ill. 2004). The result would be the same.

Regarding the common interest doctrine, the FDIC-R argues that Defendants Coleman and Flynn represented the D&Os during the time period preceding GWSB's February 19, 2010 failure when the Retainer Agreements were being negotiated, and the D&Os and GWSB shared a common legal goal with respect to the Retainer Agreements. The FDIC-R submits that the common legal goal of GWSB and the D&Os was to ensure the D&Os secured legal representation in the most advantageous way possible. The FDIC-R maintains that the D&Os possessed information and documents relating to the negotiation and/or execution of the Retainer Agreements both in their personal capacities and in their capacities as directors and/or officers (*i.e.*, fiduciaries) of GWSB. Following GWSB's failure, the FDIC-R controlled the privileges of GWSB relative to the

Retainer Agreements.

Defendants contend that the Directors and GWSB do not share a common interest. According to the Defendants, the D&Os share a common interest in that the FDIC has asserted claims for damages against them related to their service as Directors and Officers of GWSB. Defendants also claim a common interest with the D&Os such that Defendants' collaboration about the defense is protected and the disclosure among Defendants and D&OS of documents relating to the representation does not waive any protection. Defendants further argue that there is no commonality of interest between the D/Os and GWSB because "the FDIC is an adversary pursuing claims for damages against the D&Os and Defendants." (Doc. 105 at 11).

The FDIC-R has the better of the two arguments. The D&Os and GWSB shared a common legal interest in ensuring that the D&Os had adequate resources to pay for legal services in connection with potential claims which may involve them in their capacities as an officer or director of GWSB, as evidenced by the Written Consents and Retainer Agreements. The record does not support the Defendants' suggestion that the D&Os interacted or communicated with Defendants solely in their personal capacities when negotiating and executing the Retainer Agreements. Entering into the Retainer Agreements was not a purely personal matter for the D&Os. The Retainer Agreement were a matter on which GWSB was required to take formal action, could only act through the D&Os, and did act through them.

The express language of the Written Consents and Retainer Agreements confirms that the D&OS and GWSB cooperated and shared information during the negotiation and execution of the Retainer Agreements. As Defendants know all too well, "[b]anks, like other corporate entities, can only act through their officers and directors." (Doc. 13 at 1). On GWSB's behalf, the D&Os determined that GWSB would indemnify the D&Os and GWSB considered, reviewed, and approved the retention of Defendants Coleman and Flynn. (Doc. 100 at 20, 24). The D&Os (George E. Wiegel, Jr. and Mark J. Wiegel whom Defendant Coleman agreed to represent and

Grant Currier, Martin T. Lucas, and John Kovatch whom Defendant Flynn agreed to represent pursuant to the Retainer Agreements) are the exact same individuals who formally authorized and directed GWSB to enter into the Retainer Agreements.

By corporate resolution, GWSB approved of and then executed the Retainer Agreements. On November 18, 2009, each of the Directors, exercising their powers as members of GWSB's Board executed a "Written Consent of the Board of Directors" stating that they: (i) "reviewed the proposed retainer agreement pursuant to which Mr. Coleman would serve as counsel to Mark J. Wiegel and George E. Wiegel, Jr;" (ii) "determined that it is in the interest of [GWSB] to advance the retainer fees on behalf of Mark J. Wiegel and George E. Wiegel, Jr. in the amount of $150,000.00 to secure the representation of Mr. Coleman;" and (iii) approved the payment of $150,000.00 to the Law Offices of Robert Coleman as a retainer fee. (Doc. 100 at 20). The next day, GWSB (by Edna McElroy, corporate secretary), Mark J. Wiegel, George E. Wiegel, Jr. and Defendant Coleman executed the Coleman Retainer Agreement. (Doc. 1-1, at 3). On November 20, 2009, GWSB paid Defendant Coleman $150,000.00.

Similar facts apply to the Flynn Retainer Agreement. On November 30, 2009, the D&Os, exercising their powers as members of GWSB's Board, formally authorized GWSB to enter into the Flynn Retainer Agreement by executing a "Written Consent of the Board of Directors" stating they: (i) "reviewed the proposed retainer agreement pursuant to which Mr. Flynn would serve as counsel to Grant Currier, John Kovatch, Marty Lucas as well as other directors and officers of the Bank;" (ii) "determined that it is in the interest of [GWSB] to advance the retainer fees on behalf of Grant Currier, John Kovatch, Marty Lucas . . . in the amount of $100,000.00 to secure the representation of Mr. Flynn;" and (iii) approved the payment of $100,000.00 to the Law Offices of Kevin M. Flynn as a retainer fee. (Doc. 100 at 24). Later that day, GWSB (by Edna McElroy, corporate secretary) executed the Flynn Retainer. "Mark J. Wiegel, President" of GWSB executed the Flynn Retainer Agreement on behalf of Flynn's D/O clients. (Doc. 1-1 at 7). Defendant Flynn

executed the Retainer Agreement on December 3, 2009. GWSB paid Defendant Flynn $100,000.00 as a retainer fee on December 2, 2009.

As expressly confirmed in the Retainer Agreements, GWSB, the D&Os, and Defendants Coleman and Flynn discussed why the use of advance payment retainers rather than security retainers best served the interests of the D&Os. The Retainer Agreements state that "under the unique and special circumstances present at this time," Defendants Coleman and Flynn, the D&Os, and GWSB "believe the use of an Advance Payment Retainer is advantageous to the [D&Os] because of the present and likely risk that [GWSB] will be seized or otherwise taken over by the Federal Deposition Insurance Corporation . . . before the services provided for herein are fully provided." (Doc. 1-1 at 2-3, 6-7). GWSB and the D&Os were concerned that use of a security retainer would leave the D&Os "with inadequate resources to pay the Law Firm for the legal services it is providing the Clients pursuant to this Agreement." (Doc. 1-1 at 3, 7). Accordingly, the D&Os and GWSB expressly "acknowledge[d] their understanding that under the terms of this Agreement, [GWSB] intends to make a present payment to the Law Firm as an advance retainer in exchange for the commitment of the Law Firm to provide . . . legal services to the [D&Os] in the future." Id. Thereafter, GWSB executed the Retainer Agreements, approving the use of advance payment rather than security retainers, because GWSB shared the D&Os' interest in ensuring adequate resources to pay the law firms to defend the D&Os in the event that GWSB was seized or otherwise taken over the by FDIC-R.

This record is more than sufficient to establish that the common interest doctrine is applicable. GWSB and the D&Os were not adverse to one another in negotiations related to the Retainer Agreements. Rather, GWSB and the D&Os shared a common interest in advancing the retainer fees on behalf of the D&Os and avoiding "a demand of immediate freeze and repayment to the FDIC as an asset of the estate" of GWSB in the anticipated event of an FDIC take over of the Bank. (Doc. 1-1 at 2-3 and 6-7). The Retainer Agreements were designed to further this

common interest. Pursuing a common interest in such a retainer fee and at Defendants' direction, the D&Os entered into the Written Consents on behalf of GWSB approving the use of an advance payment retainers. The D&Os possessed information and documents relating to the negotiation and/or execution of the Retainer Agreements both in their personal capacities and in their capacities as directors and/or officers of GWSB. Due to the common interest between GWSB and the D&Os relative to the Retainer Agreements, communications shared with GWSB and the D&OS regarding the negotiation and execution of the Retainer Agreements do not retain any attorney-client privilege and work product production that would otherwise apply to their discussions.

FDIC v. Belongia Shapiro & Franklin, LLP, 2012 WL 5877559 (N.D. Ill. Nov. 19, 2012), cited by both parties, does not compel a different result. In Belongia, the FDIC, as receiver for a failed bank, sought enforcement of its administrative subpoena issued to a law firm that represented the bank seeking opinion letters in which the law firm advised the bank to pay the legal fees of bank personnel in three lawsuits. As to documents relating to the law firm's representation of two bank directors on a request to reconsider an adverse administrative decision in an enforcement action by the FDIC, the law firm asserted the work product and attorney-client privileges. The law firm did not represent the bank during the reconsideration proceeding. The law firm argued that because the firm did not represent the bank in the reconsideration proceeding there was no corporate attorney-client privilege for the FDIC to hold. The FDIC argued that it was entitled to the documents based on the joint-client exception to the attorney-client privilege or the common interest doctrine. The district court held that the FDIC failed to establish the applicability of the joint-client or common interest exception because there was no indication in the record that the law firm concurrently represented the bank and the directors in connection with the motion to reconsider in the administrative matter. With respect to the period when the law firm solely represented the two directors, the district court held:

> There is no indication that [the law firm] concurrently represented [the bank] and the [directors] in the *In re Michaels* matter. Rather, the record reflects that after [the law firm] issued its legal opinion to [the bank] in February 2009 regarding payment of the [directors'] legal fees, another law firm represented the [directors] in the administrative proceeding. [The law firm] did not get involved again until a year later, and at that point it represented only the two individuals–the bank does not appear to have been a party to the administrative proceeding.

Id. at *4.

In support of their assertion that the FDIC-R's reliance on the common interest doctrine is misplaced, Defendants quote the following passage from Belongia Shapiro:

> The FDIC appears to contend that Citizens' payment of the Michaels' legal fees in the *In re Michaels* matter somehow entitles Citizens (and now the FDIC) to invade the Michaels' attorney-client privilege in that proceeding. The FDIC cites no authority for this proposition . . . . There is no basis to conclude that payment of legal fees alone–which all the FDIC has shown–entitles the payor to be privy to the client's communications with his lawyer. The fact that Citizens might have been persuaded that it was in its interest to pay the Michaels' fees, or that the Michaels had been acting (in the underlying matters) in the bank's interest, does not change this.

Belongia Shapiro, 2012 WL 5877559, at *4. This ruling, however, refers only to the reconsideration proceeding in which the bank was not involved and in connection with the law firm did not confer with the bank. In sharp contrast to the situation in Belongia Shapiro, the FDIC-R is not seeking communications relating to a matter with which GWSB was not involved and Defendants did not communicate with it. Rather, the FDIC-R is seeking communications relating to the negotiation and execution of the Retainer Agreements which GWSB considered, reviewed, approved and executed after receiving Defendants' advice. The quoted statement from Belongia Shapiro thus has no bearing on the issue here.

Defendants claim that the common interest cases cited by the FDIC-R are inapposite because they were decided in the context of insurance policies containing "cooperation" clauses with corresponding duties to provide information. (Doc. 105 at 11). According to Defendants, the D&Os did not share information with GWSB because there was no "contract requiring the D&Os to give GWSB information" and they had "no duty to cooperate" with GWSB. Id. The lack of a

-10-

cooperation clause does not render the common interest doctrine inapplicable and does not help Defendants here. Beloit Liquidating Trust v. Century Indem. Co., 2003 WL 355743, at *11 (N.D. Ill. Feb. 13, 2003) (noting the Illinois Supreme Court's holding in Waste Management, Inc. v. International Surplus Lines Ins. Co., 579 N.E.2d 322 (Ill. 1991), "as to the common interest issue was independent of the court's finding that the insurance policy's cooperation cause required the insured to produce all communications from the underlying lawsuit with defense counsel."). Defendants' argument ignores the fact that the express language of the Written Consents and Retainer Agreements confirms that the D&Os and GWSB did share information related to the negotiation and execution of the Retainer Agreements.

Defendants also argue that the "mere fact that the D&Os were the agents through whom GWSB reviewed and approved the Retainers at the time the Written Consents were signed does not render the D&Os legally incapable of interacting or communicating with the Defendants solely in their personal capacities." (Doc. 105 at 10). This argument misses the point that the FDIC-R is making. Contrary to Defendants' assertion, the FDIC-R is not arguing that the "D&Os were at all times acting on behalf of GWSB when interacting with their personal attorneys." (Doc. 105 at 10). Rather, the FDIC-R argues the D&Os and GWSB shared a common legal goal with respect to the negotiation and execution of the Retainer Agreements, the D&Os and GWSB shared information related to their common legal goal, and those communications fall within the common interest doctrine. The FDIC-R recognizes that the D/Os "certainly were not precluded from retaining counsel for personal matters, and the attorney-client privilege would apply to such matters to the extent they were purely personal." (Doc. 100 at 11). The fact that the D&OS may have been legally capable of interacting or communicating with Defendants solely in their personal capacities does not mean that the D&Os did not share a common interest with GWSB in ensuring the D&Os secured legal representation in the most advantageous way possible through use of the advance retainers.

Two remaining matters merit brief mention. First, Defendants claim that certain of the FDIC-R's broader references to the groups of documents it seeks would require Defendants to surrender to the FDIC-R all of its file materials. The FDIC-R characterizes Defendants' claim as "exaggerated." (Doc. 108 at 13, n.4). The FDIC-R is "seeking communications relating to the manner in which GWSB arranged to prepay Defendants for their future services to the Directors, *i.e.*, communications relating to the negotiation and execution of the Retainer Agreements," and its briefing focused on communications relating to the negotiation and/or execution of the Retainer Agreements. Id. at 13. As narrowed by the FDIC-R in its briefing, this ruling with respect to non-Bank documents is limited to the discoverability of communications relating to the negotiation and/or execution of the Retainer Agreements; it specifically does not include any of the other general groups of documents referenced by the FDIC-R. Defendants may continue to assert attorney-client privilege and/or work product objections where applicable consistent with this ruling.

Second, Defendants assert that the FDIC-R's use of the words "relating to" in its request is overbroad because Defendants do no have reasonable notice of what is called for and what is not. (Doc. 105). This objection is overruled. The FDIC-R's request for communications relating to the negotiation and/or execution of the Retainer Agreements is sufficiently specific to enable Defendants to identify responsive documents. Cf. Lopez v. Chertoff, 2009 WL 1575214, at *2 (E.D. Cal. June 2, 2009) (holding plaintiff detainee's request for all documents "referring to [or] relating to" plaintiff from defendant sheriff was overly broad and lacked reasonable particularity because it sought every document in defendant's possession relating to plaintiff, even documents irrelevant to plaintiff's claims); Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533, 538 (D. Kan. 2003) (holding request for all documents "regarding" or "relating to" the lawsuit and eleven plaintiffs and eight EEOC charges overly broad and unduly burdensome on its face).

## **CONCLUSION**

For the reasons and to the extent set forth above, the Court grants Plaintiff's Motion to Compel [97]. Defendants shall turn over documents that fall within the statutory definition of Bank Documents to the FDIC-R. If any documents relating to the negotiation and/or execution of the Retainer Agreements are not within the statutory definition of Bank Documents, Defendants are ordered to turn those documents over to the FDIC-R because the attorney-client privilege and work-product doctrine are inapplicable.

**E N T E R :**

_____
**Daniel G. Martin**
**United States Magistrate Judge**

**Dated:  July 29, 2014**